UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
ERIN SWEENEY                 :    Civ. No. 3:13CV00703 (SALM)
                             :
v.                           :
                             :
CAROLYN W. COLVIN, ACTING    :    August 28, 2015
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION               :
                             :
-----------------------------x
```

<u>**RECOMMENDED RULING ON CROSS MOTIONS**</u>

The plaintiff, Erin Sweeney, brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Act. Plaintiff has moved for an order reversing the decision of the Commissioner, or in the alternative, for remand. [Doc. #15].

For the reasons set forth below, defendant's Motion to Affirm the Decision of the Commissioner is **GRANTED. [Doc. #21].** Plaintiff's Motion to Reverse the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing is **DENIED. [Doc. #15].**

I.   **PROCEDURAL HISTORY**

The parties do not dispute this matter's procedural history. Plaintiff filed applications for DIB and SSI on December 15, 2009, alleging disability beginning December 12, 2008. (Certified Transcript of the Administrative Record, compiled on September 24, 2013 (hereinafter "Tr.") 226-32). Both applications were denied initially on April 8, 2010 (Tr. 131-34), and upon reconsideration on July 21, 2010. (Tr. 141-43).

On September 12, 2011, the plaintiff, accompanied and represented by attorney Andrew O'Shea, appeared and testified at a hearing before administrative law judge ("ALJ") William J. Dolan. (Tr. 38-70). Vocational Expert ("VE") Jeffrey Joy also appeared and testified at the hearing. (Tr. 67-69). On October 28, 2011, the ALJ issued an unfavorable decision. (Tr. 20-33). On March 29, 2013, the Appeals Council denied plaintiff's request for review thereby making the ALJ's October 28, 2011, decision the final decision of the Commissioner. (Tr. 1-3). The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, filed this timely action for review and now moves to reverse and/or remand the Commissioner's decision. On appeal, the plaintiff asserts that the ALJ made various errors that prevented her from receiving a full and fair hearing.

2

## II.  <u>STANDARD OF REVIEW</u>

The review of a social security disability determination involves two levels of inquiry. <u>First</u>, the court must decide whether the Commissioner applied the correct legal principles in making the determination. <u>Second</u>, the court must decide whether the determination is supported by substantial evidence. <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See <u>Norman v. Astrue</u>, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of

3

the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civil Action No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to

4

determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports <u>the ALJ's decision</u>**." <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

**III. <u>SSA LEGAL STANDARD</u>**

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, Ms. Sweeney must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

5

42 U.S.C. §423(d)(2)(A)(alterations added); see also 20 C.F.R. §404.1520(c)(alterations added)(requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe").

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of

proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" ("RFC") is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §§404.1545(a), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation omitted). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial

statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

## IV.  **THE ALJ'S DECISION**

Following the above-described five-step evaluation process, ALJ Dolan concluded that plaintiff was not disabled under the Act. (Tr. 33). At Step One, the ALJ found that the plaintiff had not engaged in substantial gainful activity since December 12, 2008, the alleged onset date. (Tr. 25). At Step Two, the ALJ found that the plaintiff had the following severe impairments: obesity, lumbar degenerative disease/radiculitis, heroin abuse, migraines, depression, obsessive compulsive disorder, and bilateral patellofemoral syndrome. (Tr. 25).

At Step Three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 26-27). The ALJ specifically considered Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 12.04 (affective disorders) and 12.06 (anxiety-related disorders). (Tr. 26).

Before proceeding to Steps Four and Five, the ALJ gave careful consideration to the entire record in determining the plaintiff's RFC. The ALJ performed his analysis of the record in accordance with the requirements of 20 C.F.R. §404.1529 and §416.929 and Social Security Rulings ("SSRs") 96-4p and 96-7p.

(Tr. 27). Upon such review, the ALJ found that plaintiff had the RFC to perform light work.[1] The ALJ determined that plaintiff "must avoid ropes[,] scaffolds, and ladders[;]" could "occasionally climb stairs, balance, stoop, kneel, crouch and crawl[;]" and is also "limited to simple, routine tasks, fleeting public contact, and no strict time/production requirements." (Tr. 27).

With these limitations, the ALJ found at Step Four that plaintiff was unable to perform any past relevant work. (Tr. 31). Proceeding to Step Five, however, the ALJ found that there were a significant number of jobs in the national economy that the plaintiff could perform. (Tr. 32). The ALJ found that the plaintiff was not disabled within the meaning of the Act during the relevant time periods. (Tr. 33).

## V.   <u>DISCUSSION</u>

On appeal, the plaintiff contends that the ALJ erred in eight respects, specifically by:

1. Failing to properly determine plaintiff's severe impairments at Step Two;

---

[1] The ALJ found that plaintiff could "perform light work as defined in 20 C.F.R. [§§] 404.1567(b) and §416.967(b) except she must avoid ropes, scaffolds, and ladders, is able to occasionally climb stairs, balance, stoop, kneel, crouch, and crawl, and is further limited to simple, routine tasks, fleeting public contact, and no strict time/production requirements." (Tr. 27).

2. Concluding that plaintiff does not have an impairment or combination of impairments that meets a Listing;

3. Finding that plaintiff has the RFC for light work;

4. Committing factual errors, misstatements, distortions, or mischaracterizations of the evidence;

5. Failing to follow the treating physician rule;

6. Failing to properly determine the plaintiff's credibility;

7. Finding in his Step Five analysis that given the plaintiff's RFC, work exists in significant numbers in the national economy that she can perform; and

8. Failing to adequately develop the administrative record.

The Court will address each of plaintiff's arguments in turn.

**A.  The ALJ did not err at Step Two.**

At Step Two, ALJ Dolan found that plaintiff suffered from several severe impairments. Plaintiff contends that the ALJ failed to properly consider all of her impairments, and that he should have evaluated her wrist contusions, foot pain, and panic disorder at this step of the sequential evaluation.

A Step Two determination requires the ALJ to determine the severity of the plaintiff's impairments. 20 C.F.R. §§404.1520(a)(4)(ii); see also id. at (c). At this step, the plaintiff carries the burden of establishing that she is

disabled, and must provide the evidence necessary to make determinations as to her disability. 20 C.F.R. §404.1512(a). An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. See SSR 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996). Impairments that are "not severe" must be only a slight abnormality that has a minimal effect on an individual's ability to perform basic work activities. Id.

At Step Two, if the ALJ finds any impairment is severe, "the question whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 402 (D. Conn. 2012), aff'd, 515 F. App'x 32 (2d Cir. 2013) (quoting Pompa v. Comm'r of Soc. Sec., 73 F. App'x 801, 803 (6th Cir. 2003)). "Under the regulations, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps." Pompa, 73 F. App'x at 803 (citing 20 C.F.R. §404.1545(e)). While the Second Circuit has not directly stated that incorrectly applying the Step Two legal standard is harmless error, this approach is consistent with the Second Circuit's finding that Step Two severity determinations are to be used to screen out only de minimis claims. See Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). Further, other Circuits have found

that incorrectly applying the Step Two standard is harmless error where an ALJ finds some of plaintiff's impairments severe and continues with the sequential evaluation. See, e.g., Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless, any error [] became harmless when the ALJ reached the proper conclusion that [plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Here, the ALJ found that plaintiff had the severe impairments of: obesity; lumbar degenerative disc disease/radiculitis; heroin abuse; migraines; depression; obsessive compulsive disorder; and bilateral patellofemoral syndrome. (Tr. 25). At Step Two, the ALJ did not discuss the other impairments as to which error is claimed (wrist contusions, foot pain and panic disorder). Nevertheless, because the ALJ did find several severe impairments and proceeded with the sequential evaluation, all impairments, whether severe or not were considered as part of the remaining steps. Indeed, the ALJ's decision reflects that he considered plaintiff's alleged wrist contusions (bruises), foot pain and panic disorder in following the above-described sequential process. See Tr. 29 (summarizing medical records noting plaintiff was treated or diagnosed with wrist pain and sprain); Id. (noting plaintiff's

complaints of foot pain); Tr. 30 (summarizing consultative examiner's report diagnosing plaintiff with panic disorder).

Accordingly, the ALJ's failure to specifically determine whether each of plaintiff's claimed impairments was severe is harmless error, and would not support a reversal of the Commissioner's decision. Cf. Jones-Reid, 934 F. Supp. 2d at 402 (finding harmless error where ALJ failed to discuss certain impairments at Step Two). Therefore, the Court finds no reversible error at Step Two of the sequential evaluation.

**B.  Substantial Evidence Supports the ALJ's Step Three Findings.**

The plaintiff challenges the ALJ's findings at Step Three, arguing that she meets Listings 1.02, 1.04, and 12.04. As the defendant correctly asserts, the plaintiff bears the burden of proof at Step Three. "The applicant bears the burden of proof [at this stage] of the sequential inquiry[.]" Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012). At Step Three, an applicant is required to identify a particular listing under which she may qualify. "For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original).

### 1. Listing 1.02

The plaintiff contends that her impairments meet the requirements of Listing 1.02, which addresses major dysfunction of a joint:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.02.

### a) Listing 1.02A

Plaintiff argues that she meets Listing 1.02A because she "has pain and dysfunction in her knees." [Doc. #15-1 at 24]. In support of this position, plaintiff cites to various medical records purporting to show bilateral Knee Patellofemoral Syndrome, bilateral patella contusions, and her complaints of knee, ankle and foot pain. [Id. at 24-25]. Defendant argues that

the medical evidence of record, including the opinion evidence, does not demonstrate that plaintiff meets this Listing.

Substantial evidence supports the ALJ's conclusion that plaintiff's impairments do not meet this Listing. The records relied on by plaintiff to support her argument also serve to undermine her position. For example, medical records indicate that plaintiff had: a normal gait; no limp; full range of motion and no weakness in her knees; "[n]o problem with weight bearing[;]" and "[n]ormal strength even with resistance." (Tr. 445-46). Although plaintiff reported knee pain, medical records generally show unremarkable examinations. See Tr. 412 (reflecting complaints of bilateral anterior knee pain, but finding on examination plaintiff had "full range of motion without effusion" and "no hypersensitivity over the patella"); Tr. 425 (examination revealing full motion, as well as normal stability and gait); Tr. 445-46, supra. Further, in March 2009, plaintiff's treating physician cleared her for "light duty work." See Tr. 413 (March 26, 2009, medical record: "At this time, I think that she is suitable for light duty work. The light duty would involve lifting at a maximum 15 pounds. She should be allowed to sit or stand alternatively and there should be no climbing or kneeling.").

Last, the Court notes that plaintiff has failed to cite any evidence of record that supports a finding that she is unable to

ambulate effectively, as required by Listing 1.02A and defined in section 1.00B2b. Pursuant to 1.00B2b, an inability to ambulate effectively "means an extreme limitation of the ability to walk" and "is defined generally as having insufficient lower extremity functions to permit independent ambulation without the use of a hand-held assistive device(s) that limits the function of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Listing 1.00B2b(1). To ambulate effectively, one "must be capable of sustaining reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." Id. at Listing 1.00B2b(2). There is no evidence of record that plaintiff uses a hand-held assistive device that limits the function of her upper extremities. Finally, there is also substantial evidence of record that plaintiff is capable of ambulating effectively, as that term is defined by section 1.00B2b(2). See Tr. 417, 425, 583 (plaintiff's gait described as "normal"); Tr. 81, 109 (Drs. Tracy and Bernstein's opinions that plaintiff was capable of standing and/or walking for six hours in an eight hour workday); Tr. 413 (opinion that plaintiff was then capable of light duty work); Tr. 51-52 (plaintiff's testimony that she left home every day to attend a methadone clinic and "run errands").

Accordingly, for the reasons stated, substantial evidence supports the ALJ's finding that plaintiff did not meet Listing 1.02A.

### b) Listing 1.02B

Plaintiff next contends that her impairments meet the requirements of Listing 1.02B. Although the medical records cited by plaintiff indicate that she suffered from a wrist injury, the evidence does not support a finding that this injury meets the requirements of Listing 1.02B. This Listing requires that the impact on plaintiff's peripheral joint, here the wrist, "result[] in [an] inability to perform fine and gross movements effectively, as defined in 1.00B2c." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.02B. Pursuant to 1.00B2c, an inability to perform fine and gross movements effectively means:

> [A]n extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, [and] the inability to sort and handle papers or files[.]

20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Listing 1.00B2c. The record does not reflect that plaintiff experienced the extent of

limitations required for a finding under 1.00B2c. For example, Drs. Tracy and Bernstein opined that plaintiff had no "manipulative limitations." (Tr. 81-82, 110). Examinations of plaintiff's wrist revealed no triggering of fingers, swelling or deformity, and full range of motion. (Tr. 412, 425). Further, plaintiff testified that on a typical day she will "get up, ... clean after [her] cat, wash [her] face, brush [her] teeth, and ... usually eat something, and then ... go to the clinic, [and] run errands[.]" (Tr. 51-52). She also testified that she will help her mother with errands. (Tr. 52). There is no indication that plaintiff is unable to perform fine and gross movements effectively such that it results in the inability to perform her activities of daily living.

Medical records also reflect that plaintiff's wrist pain had improved, and that further improvement was anticipated with conservative treatment. (Tr. 410); see also Tr. 411 (Plaintiff's wrist contusion "should improve spontaneously with rest."). This casts serious doubt as to the alleged severity of plaintiff's wrist injury. While the plaintiff asserts that she has restrictions as to how much she can lift, see Doc. #15-1 at 25 (citing Tr. 453), such restrictions alone do not satisfy the requirements of Listing 1.02B.

Finally, the Court notes that plaintiff cites to the record at page 536 in support of her argument that she meets Listing

1.02B. [Doc. #15-1, 25]. However, this questionnaire is specifically tailored to back conditions, and in that regard, not relevant to the requirements of Listing 1.02B.

Accordingly, the Court finds that substantial evidence supports the ALJ's finding that plaintiff did not meet Listing 1.02B.

### 2. Listing 1.04A

Plaintiff also contends that her impairments meet the requirements of Listing 1.04A, which addresses disorders of the spine:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A.

The medical evidence of record fails to support a finding of nerve root compression. For example, an MRI of plaintiff's lumbar spine dated December 23, 2009 revealed "[l]eft lateral/foraminal disc protrusion at L4-5 abut[ting] the ventral aspect of the left sided exiting L-4 nerve root, but <u>causes no</u>

nerve root displacement." (Tr. 423 (emphasis added)); see also Tr. 417 (referencing X-ray of lumbar spine without mention of nerve root compression). Plaintiff also does not cite to any such proof. Because there is no medical evidence of record that plaintiff suffers from nerve root compression, she cannot meet this Listing.

Accordingly, the Court finds that substantial evidence supports the ALJ's finding that plaintiff did not meet Listing 1.04A.

### 3.   Listing 12.04

Plaintiff also contends that her mental impairments meet the requirements of Listing 12.04, which addresses affective disorders:

> Affective disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent of one of the following:
>
> ...
>
> AND
>
> B.  Resulting in at least two of the following:

20

1. Marked restriction in activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episode of decompensation, each of extended duration[.]

20 C.F.R. Pt. 404, Subpt. P App. 1, Listing 12.04. "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." Id. at 12.00C (citing 20 C.F.R. §§404.1520a and 416.920a).

Although not explicitly stated, plaintiff's brief implicitly raises an argument that she meets the section B requirements of Listing 12.04 because she allegedly suffered from marked impairments in her activities of daily living, social functioning, and ability to maintain concentration, persistence or pace. [Doc. #15-1 at 27]. The ALJ, by contrast, found that plaintiff was only moderately restricted in these respects, and that she suffered from no periods of extended duration decompensation. (Tr. 26). The Court finds that substantial evidence supports the ALJ's conclusion.

Plaintiff contends that she is markedly impaired in activities of daily living. This argument is primarily based on plaintiff's subjective testimony and self-prepared "Activities of Daily Living" reports. Citing her own testimony, plaintiff argues that she limits her activities because stress triggers her panic attacks. [Doc. #15-1 at 27]. However, the testimony cited to does not support this conclusion. (Tr. 50). Plaintiff also claims that she spends most of her days at home in bed (Tr. 288), yet testified that that she helps her mother run errands, and that she attends a methadone clinic on a daily basis and runs her own errands. (Tr. 51-52). Furthermore, the state reviewing, non-examining psychologists each opined that plaintiff was only moderately restricted in this regard. (Tr. 79-80, 107-08). Simply, plaintiff's activities of daily living were not impaired to a "marked" degree, as that term is defined by the Listings.

Plaintiff also contends that she is markedly impaired in social functioning, as she has trouble leaving the house due to agoraphobia, and requires "tranquilizers" to do so. [Doc. #15-1 at 27]. However, as noted by the ALJ, plaintiff does in fact leave the house to participate in daily activities (Tr. 28), and plaintiff's own description of her normal daily routine involves her leaving the house. See Tr. 51-52. Plaintiff further testified that she has no problem getting along with others. See

Tr. 49 (Q[:] You get along with people okay? A[:] Yeah,
everybody but my mother."). Plaintiff also reported that she
watches television with her mother and friend, and they "also
talk." (Tr. 293, 338). Again, the state reviewing, non-examining
psychologists each opined that plaintiff experienced only
moderate difficulties in this regard. (Tr. 79-80, 107-08).
Plaintiff was also "cooperative and made steady eye contact[]"
during the consultative examination. (Tr. 420). Accordingly,
substantial evidence supports a finding that plaintiff's social
functioning was not impaired to a "marked" degree, as that term
is defined by the Listings.[2]

Last, plaintiff argues that she is markedly impaired in
memory, concentration, persistence and pace. In making this
argument, the plaintiff asserts that her "constant conversations
with the devil" demonstrate her marked impairment. [Doc. #15-1
at 27]. Plaintiff argues: "This is a sign of a marked impairment
because [plaintiff] must stop focusing on her tasks, and instead
focuses on her mental health symptoms." Id. This argument,
however, is not supported by the record. In an evaluation by the

---

[2] The Court further recognizes that the ALJ had an opportunity to
personally observe plaintiff at the hearing. Cf. Suarez v.
Colvin, No. 14CV6505(AJP), 2015 WL 2088789, at *23 (S.D.N.Y. May
6, 2015) ("[C]ourts must show special deference to an ALJ's
credibility determinations because the ALJ had the opportunity
to observe plaintiff's demeanor while [the plaintiff was]
testifying." (quoting Marquez v. Colvin, No. 12CV6819(PKC),
2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013))).

consultative examiner, Dr. Geysen, it was noted that plaintiff's "attention and concentration were fair to good, remote and recent memory was unimpaired, she was able to perform simple math and displayed good funds of facts." (Tr. 421). The state reviewing non-examiners each also found plaintiff to suffer only moderate difficulties in this area. (Tr. 79-80, 107-08). Accordingly, substantial evidence supports a finding that plaintiff's concentration, persistence or pace were not impaired to a "marked" degree, as that term is defined by the Listings.

Accordingly, the Court finds that substantial evidence supports the ALJ's finding that plaintiff did not meet Listing 12.04.[3]

---

[3] Plaintiff further argues that the ALJ erred as a matter of law by failing to make specific findings at Step Three of the sequential evaluation. Although the ALJ should have been clearer in his analysis at this step, the "evidence of record permits [the court] to glean the rationale of [the] ALJ's decision." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983). More importantly, substantial evidence supports the ALJ's findings that plaintiff did not meet a listed impairment. Therefore, remanding this case so that the ALJ could set forth specific reasons for his Step Three finding would be a futile exercise. See Morgan Stanley Capital Grp., Inc. v. Pub. Util. Dist. No. 1, 554 U.S. 527, 545 (2008) (noting that where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game." (quotation omitted)); Snyder v. Colvin, Civil Action No. 5:13CV585(GLS)(ESH), 2014 WL 3107962, at *4 (N.D.N.Y. July 8, 2014) ("[A]dministrative legal error is harmless when the same result would have been reached had the error not occurred." (citation omitted)).

**C.   The ALJ Did Not Commit Factual Errors, Misstatements, Distortions, or Mischaracterizations of the Evidence.**

Plaintiff argues that the ALJ mischaracterized the evidence of record in evaluating her claims. Specifically, plaintiff takes issue with five alleged "factual errors" and/or "erroneous descriptions" of medical records. [Doc. #15-1 at 11].

First, plaintiff contends that the ALJ "significantly overstated" her history of drug use. Id. at 13. With respect to plaintiff's drug use, the ALJ stated, in pertinent part:

> According to treatment notes from the physicians and staff of the Community Health Center, the claimant had an approximate 6 year history of heroin abuse, but despite this history, she denied any history of substance abuse at the consultative examination... The claimant testified at the hearing that she has not abused drugs since August 2009, except for two "slip ups," but treatment notes from the Community Health Center state that in May, 2010, the claimant indicated she had just gotten out of detox, and once again on September 22, 2010, her heroin abuse was described by her treating physicians as "continuous." Exhibit 10F. Further, the STOP HERE medical evidence of record focuses mainly on her substance abuse problems[.]
>
> ...
>
> The claimant also treated with the physicians and staff of the Community Health Center, who indicated in treatment notes dated September 22, 2010, that the claimant was diagnosed with opioid abuse-continuous, and was seeking suboxone ... It was also determined that the claimant should not be treated with suboxone, and instead should use methadone and discontinue heroin use prior to obtaining this treatment. Exhibit 10F. Treatment notes from May 18, 2010, indicated that the claimant got out of a detox program two weeks prior to that visit, that her drug use started again the summer before, and since leaving the detox program had been obtaining suboxone off the streets ... The

claimant indicated on June 12, 2008, that she had just
used 5 bags of heroin during the workday the prior
Tuesday ... Treatment notes from April 16, 2008,
indicated that the claimant had been using heroin for
at least 6 years prior to that visit, going on and off
suboxone use in between, and the claimant indicated
she was concerned that her use would be detected by
drug screening at work, as she also indicated that she
had at least two prior probations. Exhibit 10F.

(Tr. 28, 30). Plaintiff claims that the ALJ "created a prejudice
against [her], and attempted to diminish the merits of her
claim[,]" by highlighting her drug use. [Doc. #15-1 at 13]. The
Court disagrees. It is evident that the ALJ considered the
plaintiff's history of drug use in evaluating her credibility,
which is permissible. Cf. Netter v. Astrue, 272 F. App'x 54, 55
(2d Cir. 2008) ("[Plaintiff] argues that the administrative law
judge ... and the district court erred in discounting his
credibility on the basis of a decades-old conviction for armed
robbery and his history of substance abuse. But he cites no
controlling legal authority for the proposition that these are
impermissible considerations."). Further, the ALJ's summary of
plaintiff's drug abuse is an accurate recitation of the evidence
of record. See Tr. 584-602 (medical records relating to
plaintiff's heroin and suboxone use). Therefore, the Court finds
no error.

Next, plaintiff contends that the ALJ erroneously
determined that she had never sought mental health treatment.
She argues that receiving a prescription for Xanax "is

26

psychiatric treatment." [Doc. #15-1 at 14]. However, plaintiff testified that she was not receiving mental health treatment and that she received Cymbalta from a "regular physician, [a] family physician." (Tr. 48). Further, while the plaintiff suggests that outpatient services at the Rushford Clinic evidence plaintiff's receipt of mental health treatment [Doc. #15-1 at 14], it should be noted that the clinic is also established as an addiction center.[4] Additionally, the plaintiff presented <u>no</u> records of any alleged psychiatric treatment. Even if the Court were to accept plaintiff's argument, to the extent the ALJ erroneously relied on plaintiff's lack of psychiatric treatment to discount her credibility, there is substantial evidence of record supporting the ALJ's credibility findings such that any misstatement of the evidence would be harmless error. <u>See</u> discussion of ALJ's credibility findings, <u>infra</u>.

Third, plaintiff argues that she did not make any "material misrepresentations" about past drug abuse. [Doc. #15-1 at 14]. Her argument is unpersuasive. The record reflects that on February 2, 2010, plaintiff represented to Dr. Geysen that she did not have a record of substance abuse. (Tr. 420). However, other evidence of record contradicts this statement. For

---

[4] "Rushford is one of Connecticut's leading providers of addiction and mental health treatment programs" for teens and adults. Rushford, https://www.rushford.org/Default.asp (last visited Aug. 11, 2015).

example, treatment notes from the Community Health Center document plaintiff's history of heroin abuse. See Tr. 600 (plaintiff "[h]as been using heroin for about 6 years or so. Always snorting it, never injected. Heroin drug of choice. Has been using suboxone on and off in between heroin use."). The ALJ did not refer to this "misrepresentation" as a basis for his decision. Rather, the "misrepresentation" was relied upon as part of the ALJ's credibility determination, which is not reversible error. (Tr. 28).

Fourth, plaintiff claims the ALJ should not have considered a 2007 note from Dr. Allen Mayott stating that plaintiff was capable of returning to medium-duty work in August 2007. The plaintiff argues that this evidence is irrelevant to her claim for disability. [Doc. #15-1 at 14]. However, she fails to articulate how the ALJ's consideration of this piece of evidence caused her prejudice. Indeed, there is no indication that the ALJ relied on this evidence in making his RFC finding; rather, it was mentioned in the course of the ALJ's summary of the medical record. Because the ALJ's RFC is supported by other substantial evidence of record, as discussed infra, there is no error in his consideration of this evidence.[5]

---

[5] Plaintiff's argument that the ALJ erred in his consideration of Dr. Mayott's 2007 note because it predates her alleged onset date is disingenuous in light of her other arguments that the ALJ erred by not considering certain opinions of her treating

Last, the plaintiff argues that it was impermissible for the ALJ to provide any weight to the subjective opinion of a social security employee who observed plaintiff wearing a backpack "that must have weighed at least 30 lbs[.]"(Tr. 298). However, the ALJ must consider observations from Agency employees when determining an applicant's disability. See SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996) ("The adjudicator must also consider any observations about the individual recorded by Social Security Administration [] employees during interviews, whether in person or by telephone."). Accordingly, the Court finds no error.

**D.   The ALJ Correctly Applied the Treating Physician Rule.**

Plaintiff next contends that the ALJ erred in his application of the treating physician rule. She also argues that the ALJ erroneously relied on the opinions of the state reviewing non-examining physicians over that of her treating physician, Dr. Karen Warner.

Pursuant to 20 C.F.R. §404.1527(c)(2), a treating source's opinion will usually be given more weight than a non-treating source. If it is determined that a treating source's opinion on the nature and severity of a plaintiff's impairment is "well-supported by medically acceptable clinical and laboratory

---

physician, which likewise predate plaintiff's alleged onset date.

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the opinion is given controlling weight. 20 C.F.R. §404.1527(c)(2). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. Id. If the treating source's opinion is <u>not</u> given controlling weight, the ALJ considers the following factors in weighing the opinion: length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence used to support the opinion, consistency of the opinion with the entire record, and the expertise and specialized knowledge of the source. <u>See</u> 20 C.F.R. §404.1527(c)(2)-(6); SSR 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996). If the treating physician's opinion is not supported by objective medical evidence or is inconsistent with other substantial evidence in the record, the ALJ need not give the opinion significant weight. <u>See</u> <u>Poupore</u>, 566 F.3d at 307.

Plaintiff initially argues that the ALJ erred by assigning "great weight" to the opinions of the non-examining state reviewing physicians. With respect to these opinions, the ALJ stated:

> State agency physician, Dr. Abraham Bernstein, reviewed the claimant's medical evidence of record and determined that she is able to occasionally lift and

30

carry up to 20 pounds, frequently lift and carry up to
10 pounds, stand or walk for a total of about 6 hours
in an 8 hour workday, sit for a total of about 6 hours
in an 8 hour workday, is able to occasionally climb
ramps and stairs, never climb ladders, ropes of
scaffolds, and is able to occasionally balance, stoop,
kneel, crouch, and crawl. Exhibit 6A.

State agency physician, Dr. Warren Leib, also reviewed
the claimant's medical evidence of record and
concluded that the claimant had moderate restrictions
of activities of daily living, moderate difficulties
in maintaining social functioning, moderate
difficulties maintaining concentration, persistence,
or pace, and suffered from no episodes of
decompensation. Exhibit 6A.

As for the opinion evidence, great weight was given to
the opinions of the state agency physicians when
determining the claimant's residual functional
capacity, specifically the opinions of Dr. Abraham
Bernstein and Dr. Warren Leib, as they were consistent
with the undersigned's findings. While these doctors
were not all able to treat the claimant, they had the
opportunity to review much of the evidence in the
file, and as physicians designated by the
Commissioner, they have vast knowledge of the Social
Security programs and its regulations.

(Tr. 30-31).

"State agency medical and psychological consultants ... are

highly qualified physicians who are experts in Social Security

disability evaluation, 20 C.F.R. §404.1527(f), and, as the

Second Circuit has held, the opinions of non-examining sources

can override the treating sources opinions provided they are

supported by evidence in the record." Mitchell v. Astrue,

3:10CV00902(CSH), 2011 WL 9557276, at *15 n.22 (D. Conn. May 24,

2011) report and recommendation adopted, 3:10CV00902(CSH), 2012

WL 6155797 (D. Conn. Dec. 11, 2012) (citing Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993)) (internal citation and quotation marks omitted). Plaintiff fails to articulate how the opinions of the state reviewing non-examining physicians are unsupported by the record - likely because they are in fact well-supported. For example, treatment notes reflect that around February 2009, plaintiff had an independent medical examination of her back, which resulted in the examining doctor stating that plaintiff was "ok for full duty with regard to back." (Tr. 357). In March 2009, Dr. Warner, plaintiff's treating physician, stated that plaintiff was then "suitable for light duty work. The light duty would involve lifting at maximum 15 pounds. She should be allowed to sit alternatively and there should be no climbing or kneeling." (Tr. 413). Plaintiff's testimony further supports the opinions, see, e.g., Tr. 51-52 (plaintiff's testimony that she left home every day to attend a methadone clinic and "run errands"), as does the observation of an Agency interviewer that plaintiff carried a back pack weighing approximately 30 pounds, see Tr. 298. With respect to plaintiff's mental RFC, the record also supports the state reviewing non-examining physicians' opinions. For example, plaintiff's mental status examination conducted on February 2, 2010, was relatively unremarkable (Tr. 420-21), and there is a dearth of evidence concerning plaintiff's alleged mental health

treatment. In that regard, plaintiff testified that she was not receiving mental health treatment at the time of the hearing and received her medications from "a regular physician, family physician." (Tr. 48).

Plaintiff further claims that the ALJ should not have relied on the opinions of the state reviewing non-examining physicians because they had not reviewed medical records from the Rushford Clinic, Dr. Blume, Dr. Pringle, Dr. Watson and Dr. Calabrese. For reasons that will be discussed infra, the Court finds this argument to be without merit.

The plaintiff next argues that the ALJ erred by failing to consider the opinions of her treating physician, Dr. Warner. [Doc. #15-1 at 18-19]. Plaintiff specifically cites to pages 380, 383 and 398 of the record, which are each Certification of Health Care Provider forms dated July 22, 2008, February 26, 2008, and February 14, 2007, respectively (the "Warner Opinions"). Id. Despite plaintiff's arguments to the contrary, the Court's review of the ALJ's decision and the record indicates that he did consider the Warner Opinions. The ALJ specifically referenced Exhibit 1F, which includes the Warner Opinions and other records from Middlesex Hospital and Middlesex Medical Associates, with which Dr. Warner was associated. (Tr. 29, 357-402). The ALJ further stated that "[s]ome weight was afforded to the claimant's treating physicians['] opinions,

including the physicians and staff of ... Middlesex Hospital."
(Tr. 31). The ALJ went on to state: "Although these providers
had the ability to examine the claimant on limited occasions,
their opinions and treatment recommendations were consistent
with the undersigned's findings regarding [RFC], and as such,
were given some weight." (Tr. 31).

The Court further finds that the ALJ's failure to accord
controlling weight to the Warner Opinions was not in error. The
Warner Opinions stated that plaintiff was "able to work full
job" when at work, and only required intermittent absences,
which "may vary per month or by season[.]" (Tr. 380, 383, 398).
The Warner Opinions also stated that plaintiff would require
intermittent leave for her "lifetime," but did not provide any
explanation for such a finding, nor did they set forth any
functional limitations. Id. In that regard, the Warner Opinions
are in large part conclusory in nature, which is but one reason
to afford such opinions less than controlling weight. See
Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir.
2011) ("Good cause" for discounting a treating physician's
opinion exists when the "treating physician's opinion was
conclusory[.]" (citation and internal quotation marks omitted)).

Subsequent treatment notes from Dr. Warner also contradict
the Warner Opinions. For example, in December 2008, Dr. Warner
stated that plaintiff could return to work after only a few

weeks, with limited functional restrictions. (Tr. 368). By February 2009, Dr. Warner had indicated that the plaintiff could perform light duty work (Tr. 413), and also referenced an orthopedic evaluation finding that plaintiff's back issues did not prohibit her from full duty capacity (Tr. 357).[6] Accordingly, the Court finds no error in the ALJ's application of the treating physician rule to the Warner Opinions.

Next, plaintiff argues that the ALJ erred by failing to discuss the opinions of Dr. Blume, Dr. Blake, Dr. Pringle, and Dr. Watson [Doc. #15-1 at 19][7], none of which were part of the administrative record. In fact, the record indicates that plaintiff saw each of these doctors well before her alleged onset date, making them irrelevant to her claims. See Tr. 303-06 (plaintiff reported: last seeing Dr. Blake in 2006, with no future appointments scheduled; last seeing Dr. Blume in 1998 with no future appointments scheduled; last seeing Dr. Pringle in 1996 with no future appointments scheduled; and last seeing

---

[6] Further, because the Warner Opinions predate plaintiff's disability onset date (December 12, 2008), they are not considered "substantial evidence." See Ketcham v. Astrue, No. 5:10CV140, 2011 WL 3100673, at *7 (D. Vt. July 25, 2011) ("It is well-settled that medical opinions of any physician, treating or examining, which predate the alleged onset of disability are not considered substantial evidence." (citation and quotation marks omitted).

[7] Plaintiff does not claim any error with respect to the opinion of Dr. Calabrese, which also was not incorporated in the administrative record.

Dr. Watson in 2005 with no future appointments scheduled). Under 42 U.S.C. § 423(d)(5)(B) and 20 C.F.R. § 416.912(d)(2), the ALJ must develop a medical history for the 12 months prior to the alleged onset date. There is no indication that these physicians treated the plaintiff during the relevant time period. Further, as discussed at length below, plaintiff has failed to demonstrate how the information set forth in these alleged medical records would undermine the ALJ's decision.

Finally, plaintiff states that, "courts have 'consistently held that the failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" [Doc. #15-1 at 19 (citing cases)]. However, she fails to develop this argument or provide any persuasive analysis as to this claimed error. The Court will not make plaintiff's arguments for her and therefore considers this argument waived.

Therefore, the Court finds that the ALJ did not err in his application of the treating physician rule.

**E.   The ALJ Properly Determined the Plaintiff's Credibility.**

Plaintiff next argues that the ALJ erred in his credibility determination. The ALJ is required to assess the credibility of the plaintiff's subjective complaints. See generally 20 C.F.R. §404.1529. The courts of the Second Circuit prescribe a two-step process. First, the ALJ must determine whether the record

demonstrates that the plaintiff possesses a medically
determinable impairment that could reasonably produce the
alleged symptoms. 20 C.F.R. §404.1529(b). Second, the ALJ must
assess the credibility of the plaintiff's complaints regarding
the intensity of the symptoms. 20 C.F.R. §404.1529(c). To do
this, the ALJ must determine if objective evidence alone
supports the plaintiff's complaints; if not, the ALJ must
consider other factors laid out at 20 C.F.R. §404.1529(c). See
Skillman v. Astrue, No. 08CV6481, 2010 WL 2541279, at *6
(W.D.N.Y. June 18, 2010). These factors include: "(1) the
claimant's daily activities; (2) the location, duration,
frequency and intensity of the claimant's pain; (3) any
precipitating or aggravating factors; and (4) the type, dosage,
effectiveness, and side effects of any medication taken by
claimant to alleviate the pain." Id. (citations omitted). The
ALJ must consider all the evidence in the case record. SSR 96-
7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996). Furthermore,
the credibility finding "must contain specific reasons ...
supported by the evidence in the case record, and must be
sufficiently specific to make clear to the individual and to any
subsequent reviewers the weight the adjudicator gave to the
individual's statements and the reasons for that weight." Id. at
*4. "Put another way, an ALJ must assess subjective evidence in

light of objective medical facts and diagnoses." <u>Williams</u>, 859 F.2d at 261.

After summarizing plaintiff's testimony, the ALJ made the following statement regarding plaintiff's credibility:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The undersigned finds the testimony of the claimant concerning her impairments is not consistent with the medical evidence of record, and material inconsistencies in the claimant's testimony, and in her statements to providers, result in the determination that she has poor credibility.

(Tr. 28). The ALJ then conducted a detailed analysis of the objective and other medical evidence of record supporting this finding. (Tr. 28-30).

Plaintiff first takes issue with the ALJ's use of "boilerplate language," which she claims is "meaningless," and contends that this matter should be remanded so that the ALJ can make explicit credibility findings. [Doc. #15-1 at 30]. This argument, however, is without merit as the ALJ's credibility analysis was not <u>limited</u> to boilerplate language. Indeed, as noted above, he engaged in an extensive analysis of the record and found plaintiff not credible based on a number of different factors including: inconsistencies in her testimony; plaintiff's

receipt of unemployment compensation[8] until at least December 2010; lack of mental health treatment; history of drug abuse; and inconsistencies between her testimony and the medical evidence of record. (Tr. 28-30). Accordingly, the ALJ's use of boilerplate language does not constitute error, where he has adequately explained his credibility findings. See Halmers v. Colvin, No. 12CV00288(MPS), 2013 WL 5423688, at *7 (D. Conn. Sept. 26, 2013) ("[T]he use of boilerplate language is not an error [] 'if the ALJ has otherwise explained his conclusion adequately[.]'"(quoting Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012)).

Next, plaintiff contends that the ALJ did not properly consider her complaints of pain. The Court disagrees. A close review of the ALJ's decision reflects that he did in fact consider plaintiff's allegations of pain, their consistency or inconsistency with the objective medical evidence, and how such complaints of pain generally did not result in functional limitations. See Tr. 27-30. Although "the subjective element of pain is an important factor to be considered in determining disability," Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984)

---

[8] "[R]eceipt of unemployment benefits does not preclude the receipt of Social Security disability benefits[,] but rather, is only one of the many factors that must be considered in determining whether the claimant is disabled." Plouffe v. Astrue, No. 3:10CV1548(CSH), 2011 WL 6010250, at *22 (D. Conn. Aug. 4, 2011)(internal quotation marks omitted).

(citation omitted), an ALJ is not "required to credit [plaintiff's] testimony about the severity of her pain and the functional limitations it caused." Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008). Indeed, "[t]he ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979); Snell, 177 F.3d 128, 135 (2d Cir. 1999). This is precisely the evaluation performed by the ALJ here.  Accordingly, the Court finds no error.

Last, plaintiff argues that she is entitled to substantial credibility because of her work history. Although it is unclear whether the ALJ considered plaintiff's work history, a good work record is just one of many factors that the ALJ should consider and it does not mean that the ALJ must find the claimant's allegations credible if the medical record does not otherwise support a finding of disability. See, e.g., Diaz v. Astrue, No. 3:11CV00317, 2012 WL 3903388, at *7 (D. Conn. Aug. 2, 2012), recommended ruling approved and adopted by, 2012 WL 3854958 (D. Conn. Sept. 12, 2012); see also 20 C.F.R. §§404.1529(c)(3), 416.929(c)(3). The ALJ's failure to consider this one factor in his credibility assessment does not require reversal. See Malloy v. Astrue, No. 3:10CV190(MRK)(WIG), 2010 WL 7865083, at *29 (D.

Conn. Nov. 17, 2010) (noting that a good work record "is not dispositive in determining credibility and does not override all of the other evidence of record" (citation omitted)). Accordingly, the Court finds no error.

Here, where the ALJ has identified a number of specific reasons for his credibility determination, which are supported by substantial evidence in the record, the Court will not second-guess his decision. See Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010). Moreover, the ALJ had the opportunity to personally observe plaintiff and her testimony, something the Court cannot do. Accordingly, the Court finds no error in the ALJ's assessment of plaintiff's credibility.

## F.   There is Substantial Evidence Supporting the ALJ's RFC Determination.

Plaintiff next argues that the ALJ failed to properly determine her RFC. The ALJ found that plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she must avoid ropes, scaffolds, and ladders, is able to occasionally climb stairs, balance, stoop, kneel, crouch and crawl, and is further limited to simple routine tasks, fleeting public contact, and no strict time/production requirements." (Tr. 27).

Plaintiff first claims that "it is unclear what the ALJ relied on to get the RFC description[.]" [Doc. #15-1 at 34]. The

41

Court construes this as an argument that the ALJ's RFC is not
supported by substantial evidence.

The regulations define light work as follows:

Light Work. Light work involves lifting no more than
20 pounds at a time with frequent lifting or carrying
of objects weighing up to 10 pounds. Even though the
weight lifted may be very little, a job is in this
category when it requires a good deal of walking or
standing, or when it involves sitting most of the time
with some pushing and pulling of arm or leg controls.
To be considered capable of performing a full or wide
range of light work, you must have the ability to do
substantially all of these activities. If someone can
do light work, we determine that he or she can also do
sedentary work, unless there are additional limiting
factors such as loss of fine dexterity or inability to
sit for long periods of time.

20 C.F.R. §§404.1567(b), 416.967(b). Despite plaintiff's
arguments to the contrary, the ALJ's RFC determination is
supported by substantial evidence of record. Specifically, the
ALJ conducted a detailed review of the relevant evidence of
record, including plaintiff's testimony, treatment notes from
plaintiff's medical providers, and the medical opinions of
record. (Tr. 27-31). As previously discussed, the ALJ
permissibly placed "great weight" on the opinions of the state
reviewing non-examining physicians Drs. Bernstein and Leib. The
limitations ascribed by their respective physical and mental RFC
determinations support the ALJ's RFC findings. See discussion of

treating physician rule, supra.[9] Other substantial evidence of
record, recited in the Court's discussion above, also supports
the ALJ's findings. See Tr. 48, 51-52, 298, 357, 413, 420-21,
discussed, supra.

Plaintiff next argues that the ALJ did not have a complete
record when assessing plaintiff's RFC. However, for reasons
discussed infra, the Court finds that the ALJ adequately
developed the record, and therefore rejects this argument.

Finally, plaintiff argues that the ALJ failed to include
descriptions of her "undisputed limitations," such as her back,
knee and wrist pain, and her "limited range of motion[,]" in his
"RFC description[.]" [Doc. #15-1 at 34]. The Court finds this
argument without merit. As previously stated, the ALJ's decision
reflects that he did in fact consider plaintiff's allegations of
pain, their consistency or inconsistency with the objective
medical evidence, and how such complaints of pain generally did
not result in functional limitations. See, e.g., Tr. 28 (noting
plaintiff only treats with over the counter pain medication);
Tr. 29 (summarizing medical records reporting plaintiff's
complaints of, and treatment for, back, knee and wrist pain). He
further conducted an extensive credibility analysis and

---

[9]Although not specifically cited by the ALJ, the opinions of the
other state reviewing non-examining physicians, which are
consistent with the opinions of Drs. Bernstein and Leib, lend
further support to the ALJ's RFC findings. See Tr. 73-86.

permissibly found plaintiff's claims of pain not credible. <u>See</u> Tr. 27-31.

To the extent plaintiff argues that the ALJ did not consider her "limited range of motion," she cites to one treatment record in support of this statement. [Doc. #15-1 at 34 (citing Tr. 458)]. However, the treatment record cited to does not support plaintiff's position. There is other substantial evidence of record stating that plaintiff possessed a normal range of motion in several respects and/or that her range of motion had improved. <u>See, e.g.</u>, Tr. 472 (noting improved range of motion in wrist); Tr. 481 (examination revealed full range of motion in knees and right wrist); Tr. 482 (examination revealed full range of motion of knees). Plaintiff has otherwise failed to demonstrate how her alleged wrist, knee and back pain, and limited range of motion, affect the ALJ's RFC finding. Accordingly, the Court finds no error.

Finally, plaintiff contends that the ALJ "did not include the totality of the VE's testimony in his decision." [Doc. #15-1 at 35]. Specifically, plaintiff argues that the ALJ ignored the VE's testimony that "if [plaintiff] were to be off-task 20% of the work week, she would be unable to work any job." <u>Id.</u> (citing Tr. 67). Plaintiff mischaracterizes the VE's testimony in response to the ALJ's hypothetical. The testimony to which plaintiff refers was as follows:

> Q[:] If you were to further assume that the
> hypothetical individual under consideration would be
> limited to sedentary work, would require an at-will
> sit/stand option, would be off task frequently
> throughout the workday, requiring frequent reminders
> to get back on task, would be absent from work up to
> one day per week, would such a person be able to
> perform any of the jobs you've identified or any other
> jobs?
> A[:] No, your honor.

(Tr. 67). The question was hypothetical. Here, by contrast, the

ALJ did not find plaintiff limited to sedentary work, or likely

to be absent from work up to one day per week. Accordingly, this

hypothetical is not relevant to the ALJ's RFC findings. In

further support of this argument, plaintiff cites to the Warner

Opinions for the position that plaintiff "should be expected to

be absent from work two days at a time, two to three times per

month." [Doc. #15-1 at 35 (citing Tr. 380, 383, 398)]. However,

as previously discussed, the Warner Opinions to which plaintiff

cite all relate to a period of time preceding plaintiff's

alleged onset date of December 12, 2008, and therefore are not

considered "substantial evidence." See Ketcham, 2011 WL 3100673,

at *7. Accordingly, the Court finds no error.

Thus, for the reasons stated, the Court finds no error in

the ALJ's RFC assessment, which is supported by substantial

evidence of record.

**G.     There is Substantial Evidence Supporting the ALJ's
        Step Five Determination.**

Plaintiff next contends that the ALJ erred at Step Five of
the sequential evaluation because he failed to present credible
evidence of jobs which plaintiff could perform with her "actual"
RFC. [Doc. #15-1 at 35]. Substantial evidence supports the ALJ's
determination that the plaintiff is able to perform a
significant number of jobs in the national economy. As
discussed, the ALJ properly weighed the medical evidence at
issue, and his RFC and credibility findings are supported by
substantial evidence of record. As to whether there are jobs
that the plaintiff can perform, the VE testified that given the
RFC determined by the ALJ, the plaintiff would be able to
perform occupations such as mail room clerk, inspector/hand
packager, and cleaner/housekeeper. (Tr. 32, 65-67). As the
testimony of the VE is consistent with the findings of the ALJ
and the evidence in the record, there is substantial evidence
supporting the ALJ's determination that the plaintiff can
perform a significant number of jobs that exist in the national
economy. Accordingly, this argument is without merit. See, e.g.,
Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009)
(citations omitted) ("An ALJ may rely on a vocational expert's
testimony regarding a hypothetical so long as the facts of the
hypothetical are based on substantial evidence, and accurately

reflect the limitations and capabilities of the claimant involved.").

### H.    The ALJ Adequately Developed the Administrative Record.

Plaintiff argues that the ALJ failed to adequately develop the administrative record. Specifically, plaintiff argues that additional medical records from the Rushford Clinic, Dr. Blume, Dr. Pringle, Dr. Watson, and Dr. Calabrese, should have been included in the administrative record.[10]

Before determining that the ALJ's determinations on this matter are truly conclusive and supported by substantial evidence, this court must satisfy itself that the plaintiff "had a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." Echevarria v. Sec'y of Health & Human Serv., 685 F.2d 751, 755 (2d Cir. 1982) (citation and internal quotation marks omitted). In that regard, plaintiff must show how she was prejudiced by the ALJ's failure to obtain these additional treatment records. See Nelson

---

[10] Although plaintiff refers to an alleged missing opinion of Dr. Arthur Blake in other portions of her brief, see Doc. #15-1 at 19, she does not contend that the administrative record is deficient due to the absence of Dr. Blake's treatment records. Id. at 10-11. Regardless, for the reasons discussed as to the treatment records of the other medical providers, the ALJ did not err in failing to include Dr. Blake's records. The plaintiff last reported seeing him in 2006 and noted that there were no future appointments scheduled. (Tr. 303-04). Plaintiff fails to explain how these missing records would otherwise undermine the ALJ's decision.

v. Apfel, 131 F.3d 1228, 1235 (7th Cir. 1997). To demonstrate prejudice, plaintiff must show that these records would "undermine [] the ALJ's decision." Lena v. Astrue, No. 3:10CV893 (SRU), 2012 WL 171305, at *9 (D. Conn. Jan. 20, 2012) (citing King v. Astrue, 3:09CV100(SRU), slip. op. at 20-22 (D. Conn. Sept. 22, 2010)(unpublished)). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." Nelson, 131 F.3d at 1235 (citation and internal quotation marks omitted).

As previously discussed, because treatment by Dr. Blume,[11] Dr. Pringle,[12] and Dr. Watson[13] occurred more than 12 months before the plaintiff's alleged disability onset date, the records are not necessarily required to create a complete record. See 20 C.F.R. 404.1512(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application."). Further, plaintiff fails to establish how these records would undermine the ALJ's decision. As to the treatment records of Dr.

---

[11] Plaintiff reported last seeing Dr. Blume in 1998. (Tr. 304).
[12] Plaintiff reported last seeing Dr. Pringle in 1996. (Tr. 305).
[13] Plaintiff reported last seeing Dr. Watson in 2005. (Tr. 2005).

Calabrese, the record reflects that he treated Ms. Sweeney as late as 2007. (Tr. 304). However, the plaintiff has neither identified the specific relevance of Dr. Calabrese's records, nor any information contained in these records that would have undermined the ALJ's decision. As the plaintiff has made no showing that Drs. Blume, Pringle, Watson and Calabrese's missing records are material or that their absence resulted in any prejudice, the ALJ did not fail to develop the record by failing to obtain these records. See Lena, 2012 WL 171305, at *9.

The plaintiff further argues that the administrative record should have included records from the Rushford clinic. While treatment at the Rushford Clinic occurred after the plaintiff's alleged disability onset date, the plaintiff has again made no showing that the absence of these records has resulted in prejudice. The plaintiff, represented by counsel, has pointed to no prejudice or specific evidence to be considered on remand, and has not shown that any missing records are material, or would otherwise undermine the ALJ's decision.

Plaintiff merely speculates that this additional evidence might have been obtained without articulating how these records, many of them now nearly twenty years old, would undermine the ALJ's decision. This is not enough to warrant a remand. See Nelson, 131 F.3d at 1235. Accordingly, the Court finds that the

49

ALJ did not fail to adequately develop the administrative record.

## VI.   CONCLUSION

For the reasons set forth herein, the ruling of the ALJ is supported by substantial evidence in the record. Therefore the defendant's Motion to Affirm the Decision of the Commissioner **[Doc. #21]** is **GRANTED**. The plaintiff's Motion to Reverse the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #15]** is **DENIED**.

This is a Recommended Ruling. See Fed. R. Civ. P. 72(b)(1). Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with order. See Fed. R. Civ. P. 72(b)(2). **Failure to object within fourteen (14) days may preclude appellate review.** See 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b); and D. Conn. L. Civ. R. 72.2; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989)(per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

SO ORDERED at New Haven, Connecticut, this 28th day of August, 2015.

_____
         /s/
**HON. SARAH A. L. MERRIAM**
**UNITED STATES MAGISTRATE JUDGE**