UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERIN SWEENEY, | : | CIVIL ACTION No. |
|     Plaintiff, | : | 3:13-CV-703 (JCH) |
| | : | |
| v. | : | |
| | : | |
| CAROLYN COLVIN, | : | SEPTEMBER 25, 2015 |
| COMMISSIONER OF THE | : | |
| SOCIAL SECURITY ADMINISTRATION, | : | |
|     Defendant. | : | |
| | : | |

**RULING RE: OBJECTION TO RECOMMENDED RULING (Doc. No. 25)**

**I.     INTRODUCTION**

Plaintiff Erin Sweeney brought this action under section 1631(c)(3) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  See 42 U.S.C.  § 1383(c)(3).  Magistrate Judge Sarah A.L. Merriam issued a Recommended Ruling on Cross Motions (Doc. No. 24) granting the Commissioner's Motion to Affirm the Decision of the Commissioner (Doc. No. 21) and denying Sweeney's Motion to Reverse the Decision of the Commissioner or in the Alternative for Remand for a New Hearing (Doc. No. 15).  Sweeney objects to the Recommended Ruling, arguing, inter alia, that it erred in finding that the Administrative Law Judge ("ALJ") adequately developed the record and properly assessed Sweeney's credibility. See Plaintiff's Memorandum in Support of Plaintiff's Objection to Magistrate Judge's Recommended Ruling (Doc. No. 25) at 1-3.  The court assumes familiarity with the Recommended Ruling.

For the reasons set forth below, the court overrules Sweeney's Objection, and it affirms, adopts, and ratifies the Recommended Ruling.

## II.    STANDARD OF REVIEW

A district court reviews de novo those portions of a magistrate judge's recommended ruling to which an objection is made.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The remainder of the recommended ruling will be set aside "only for clear error."  Campbell v. Astrue, 596 F. Supp. 2d 446, 448 n.1 (D. Conn. 2009).  The court may adopt, reject, or modify, in whole or in part, a magistrate judge's recommended ruling.  28 U.C.S. § 636(b)(1).

In review of a Social Security disability determination, a court will set aside the decision of an ALJ "only where it is based upon legal error or is unsupported by substantial evidence."  Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).  As the Supreme Court has instructed, "substantial evidence is more than a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  Rather, substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  Further, the substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact.  See Gonzalez v. Apfel, 23 F. Supp. 2d 179, 198 (D. Conn. 1998).

Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently.  See Eastman v. Barnhart, 241 F Supp. 2d 160, 168 (D. Conn. 2003).  In other words, "[w]here an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not

2

substitute its judgment for that of the Commissioner." Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).

### III. DISCUSSION

Sweeney's Objection raises five arguments. The court assesses each in turn.

A. The ALJ's Failure to Subpoena Mental Health Records for the Period Preceding the 12 Months before the Onset of Plaintiff's Disability

Sweeney first argues that the Recommended Ruling errs in declining to remand because the ALJ did not subpoena medical records from several physicians with whom Sweeney met in 1996, 1998, 2005, and 2007.[1] Her disability was alleged to have begun on December 12, 2008, and she filed applications for DIB and SSI on December 15, 2009. This error, she claims, results in her appearing not to have sought mental health treatment.

The Code of Federal Regulations (the "Code") provides, in pertinent part, as follows.

> Before we make a determination that you are not disabled, we will develop your complete medical history, for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application.

20 C.F.R. 404.1512(d). This provision absolutely requires the ALJ to subpoena medical records for the 12 months preceding December 15, 2009 – that is, as far back as December 15, 2008. The ALJ's responsibility to subpoena records further back than

---

[1] The 2007 physician, a Dr. Lori Calabrese, is listed in Sweeney's Disability Report, Record at 304, and the date of last appointment is accompanied by a question mark ("2007?"). Even at its most generous interpretation, this appointment fell as many as 12 months before the "12 months preceding the month in which [Sweeney] filed," 20 C.F.R. 404.1512(d), which was the only time period the ALJ was required to subpoena records.

3

December 15, 2008, necessitates a finding that "there is reason to believe that development of [the] earlier period is necessary." Id.  To demonstrate prejudice for failure to subpoena records beyond the 12-month minimum period, the plaintiff must show that the records were "reasonably necessary for the full presentation of the case." See DeChirico v. Callahan, 134 F.3d 1177, 1184 (2d Cir. 1998) (internal citations omitted).  Further, to establish prejudice in an ALJ's failure to subpoena records generally, the plaintiff must show that the records in question would undermine the ALJ's decision.  See Nelson v. Apfel, 131 F.3d 1228, 1235 (7th Cir. 1997) ("Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand.") (quotation omitted) (cited with approval in Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the [administrative] agency's determination.")). See also Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996) (holding that ALJ's omission of retrospective medical analysis was not reversible error because "there was nothing presented at the hearing to indicate that retrospective assessments would have revealed any useful information").

   Sweeney has not carried her burden of showing that there is reason to believe these records were "necessary" to a fair disposition of her Social Security application. Sweeney argues that, "The ALJ cannot fail to acquire evidence that shows that Ms. Sweeney received mental health treatment for many years up to, and inclusive of the onset of her disability, and then find that Ms. Sweeney did not receive mental health treatment."  Plaintiff's Memorandum (Doc. No. 25) at 2.  Sweeney's argument is flawed in two respects.  As an initial matter, the ALJ concluded she was not presently in mental

4

health treatment, not due to willful ignorance, but rather because Sweeney herself told the ALJ that she was not receiving mental health treatment "at the moment," and that the doctor who prescribed her Cymbalta, "for several things," was a "regular physician, family physician." Record at 48.

Further, Sweeney has not articulated why records of four physicians from between one and 23 years before she applied for benefits would be "necessary" to a fair disposition of her application. As far as the court can discern, Sweeney believes that the ALJ's conclusion that she had not received mental health treatment weighed adversely against her credibility, and the records might have been relevant in making that determination. See Recommended Ruling (Doc. No. 24) at 27. However, this argument was not raised clearly in Sweeney's Objection. In any event, substantial evidence supports the ALJ's credibility findings, see infra, such that any misinformed belief the ALJ may have had regarding her history of mental health treatment would be harmless error.

It is instructive to consider a case in which it was deemed necessary to obtain records beyond the 12 month period preceding an applicant's filing for benefits. In Mimms v. Heckler, 740 F.2d 180 (2d Cir. 1984), the court found that the ALJ erred in failing to subpoena an applicant's 5- or 6-year old medical records where the applicant had already been receiving disability benefits before for the same medical reasons that controlled the application at issue (making the medical records critically relevant), and the applicant was not represented by counsel (increasing the ALJ's duty to be attentive to the needs of the applicant). See id. at 185; see also DeChirico v. Callahan, 134 F.3d 1177, 1184 (2d Cir. 1998) (discussing the significance of pro se status in Mimms).

5

This case is a considerably different case than <u>Mimms</u>.  Here, Sweeney has failed to articulate a reason why records as far removed from the date of her application as 23 years are necessary; she was not previously receiving disability benefits; additionally, she was represented by counsel at the hearing before the ALJ.  Bearing these factors in mind, the court finds that the ALJ did not abuse his discretion in not subpoenaing Sweeney's 1996, 1998, 2005, and "2007(?)" medical records, and that her objection to the Recommended Ruling on this point is without merit.[2]

> B.      The Recommended Ruling's "Excusal" of ALJ's "Numerous Errors"

Sweeney argues that the Recommended Ruling "excuses" several errors by the ALJ.  The first such excusal is the observation, made in Magistrate Judge Merriam's Recommended Ruling, that "Although the ALJ should have been clearer in his analysis at [Step Three], the 'evidence of record permits the court to glean the rationale of the ALJ's decision.'"  Recommended Ruling (Doc. No. 24) at 24 n.3, quoting <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1040 (2d Cir. 1983).  This, Sweeney contends, constitutes an admission by the Magistrate Judge that the ALJ erred as a matter of law and that the case must necessarily be remanded.

However, the holding of <u>Mongeur</u> is clear: provided substantial evidence supports the ALJ's conclusion, even an absence of clear findings in the ALJ's decision will not warrant reversal.  <u>Mongeur</u>, 722 F.2d at 1040.  As a threshold matter, the court observes that the ALJ's decision does, in fact, make findings at Step Three.  The ALJ states that the medical records available support those findings.  <u>See</u> Record at 26.

---

[2] Sweeney raises this argument three different times in her Objection under different headings. See Plaintiff's Memorandum (Doc. No. 25-1) at 1-2, 3, 4.  The court's ruling here applies to all aspects of this argument in Sweeney's papers.

6

Even if the decision made a bare assertion, at Step Three, that Sweeney's impairments do not meet the severity required to generate a finding of disability at Step Three, substantial evidence supports the ALJ's findings.  See generally Recommended Ruling (Doc. No. 24) at 13-24.

For example, with regard to the ALJ's finding that Sweeney did not meet the requirements of Listing 1.02 (major dysfunction of a joint), evidence of record shows that plaintiff had "a normal gait; no limp; full range of motion; and no weakness in her knees."  Record at 445-46.  With regard to the ALJ's finding that Sweeney did not meet the requirements of Listing 1.04A (disorders of the spine involving nerve root compression), plaintiff's 2009 MRI indicates that her lateral/foraminal disc protrusion "causes no nerve root displacement."  Record at 423.  With regard to the ALJ's finding that she did not meet the requirements of Listing 12.04 (affective disorders requiring "marked" limitations in daily living, social functioning, maintaining concentration, or repeated episodes of extended decompensation), evidence of record shows that Sweeney regularly left the house to run errands and the like, Record at 51-52; does not have a problem getting along with others, Record at 49; and had "fair to good" attention and concentration, according to a consultative examiner, Record at 421.  In short, "evidence of record permits the court to glean the rationale of the ALJ's decision." Mongeur, 722 F.2d at 1040.  Sweeney's argument to the contrary is without merit.

Next, Sweeney argues that the Recommended Ruling errs in accepting the ALJ's negative credibility determination despite the fact that "it is unclear whether the ALJ considered plaintiff's work history."  Recommended Ruling (Doc. No. 24) at 40. Sweeney urges the court to remand because this lack of clarity is, she insists, so

insufficiently specific as to preclude "adequat[e] review [of] the record." Plaintiff's Memorandum (Doc. No. 25-1) at 3. The court disagrees. The Second Circuit has explicitly found that, under similar circumstances, "[n]o different conclusion is warranted by the ALJ's failure to reference specifically [the social security applicant]'s good work history, because substantial evidence aside from work history supports the adverse credibility ruling." Stanton v. Astrue, 370 Fed. App'x 231, 234 (2d Cir. 2010). Here, substantial evidence supports the ALJ's credibility determination. See generally Recommended Ruling (Doc. No. 24) at 36-41. The ALJ specifically stated on the record that the plaintiff's considerable inconsistencies between her testimony and the medical evidence, her evasive manner concerning her history of drug abuse, and her lack of contemporaneous mental health treatment resulted in an adverse credibility finding.[3] In light of the record evidence, the court cannot say that the ALJ's adverse credibility finding was not supported by substantial evidence and consequently cannot reverse.

C.  The ALJ's Consideration of Dr. Allen Maryott's 2007 Note

Sweeney contends that the Recommended Ruling erred in finding that the ALJ did not commit reversible error by mentioning, in his recitation of the medical evidence in the case, a piece of medical evidence that predates the onset date of Sweeney's alleged disability. Specifically, the ALJ noted that, in March 2007, Sweeney suffered a

---

[3] For example, "[t]he claimant testified that she is unable to leave the house due to alleged agoraphobia, but also testified that she leaves on a daily basis to seek treatment at the methadone clinic and to help her mother run errands. . . . The claimant testified that, despite alleging disability, she continued to look for employment after her alleged onset date, and testified that she applied for 'all sorts of stuff' including positions at restaurants, and investigative 'stuff.' . . . The claimant testified . . . that she has not abused drugs since August 2009, except for two 'slip ups,' but treatment notes from the Community Health Center state that . . . on September 2010, her heroin abuse was . . . 'continuous.' . . . Further, the STOP HERE medical evidence of record focuses mainly on her substance abuse problems and make little mention of any depressive symptoms, especially since the claimant is currently receiving no mental health treatment." Record at 28.

8

work related injury involving "almost identical complaints," and that a Dr. Allen Maryott "indicated that in his opinion, the claimant could return to work on April 23, 2007." Record at 29. Sweeney's alleged disability is said to have begun in December 2008. Sweeney argues that mentioning Dr. Maryott's note constitutes reversible error because it predates the disability. However, nothing in the ALJ's opinion indicates that he relied on this note <u>in any way</u> to reach the conclusion that Sweeney did not have a disability. Rather, it was just one of many facts that relate to the physical symptoms she ultimately claimed constituted a disability. The ALJ does not mention the note anywhere else in his decision, and it was not given controlling weight, if it was given any weight at all. Again, it is the court's task to ensure that the ALJ's decision rests on substantial evidence. As discussed <u>supra</u>, the decision so rests, and the mention of Dr. Maryott's opinion does not indicate otherwise.

    D.    The ALJ's Residual Functional Capacity Determination and Weight <u>Assessments</u>

The remainder of Sweeney's arguments consist, first, of a claim that the Recommended Ruling "erred in understanding the definition of light exertion work," and second, a claim that the Recommended Ruling "erroneously accepted the ALJ's weight assignments" inasmuch as the ALJ provided some degree of weight to "the subjective opinion of a social security employee who observed plaintiff wearing a backpack 'that must have weighted at least 30 lb[.]" Recommended Ruling (Doc. No. 24) at 29, quoting Record at 298. Both arguments are without merit.

The Recommended Ruling accurately stated the definition of "Light Work," and properly concluded that substantial evidence supported the ALJ's determination that Sweeney is qualified to perform light work within the meaning of the Code. <u>See</u>

9

Recommended Ruling (Doc. No. 24) at 41.  See also 20 C.F.R. 404.1567(b).  Sweeney appears to be arguing that, because the Recommended Ruling accepted the ALJ's finding that Sweeney did not meet Listing 1.02A based in part on a medical record that lists slightly different activities than the definition of "Light Work" in the Code, the Ruling misunderstands what "Light Work" is.  See Plaintiff's Memorandum (Doc. No. 25-1) at 5.  However, the Ruling's reliance on the relevant medical record in determining whether substantial evidence supported a finding that Sweeney did not meet Listing 1.02A is a matter entirely removed from the question whether adequate evidence supported the ALJ's Residual Functioning Capacity ("RFC") determination.  Because the court finds that the Ruling properly found that substantial evidence supported the ALJ's RFC determination – including medical records indicating a normal range of motion, see Record at 472, 483, and an adverse credibility determination based on substantial evidence, see id. at 28-29 – it finds Sweeney's argument without merit.

Finally, Sweeney argues that the Recommended Ruling erred in failing to reverse the ALJ's decision because the ALJ evidently lent some credence to a social security worker's subjective determination that Sweeney was seen carrying a backpack that "must have weighed at least 30 lb."  Record at 298.  "[U]nlike size, shape, or volume," Sweeney insists, "weight . . . cannot be estimated by sight alone."  Plaintiff's Memorandum (Doc. 25-1) at 6.  However, even assuming there is merit to this assertion,[4] the ALJ does not appear to have relied explicitly on this observation in

---

[4] As the Recommended Ruling observes, "the ALJ must consider observations from agency employees when determining an applicant's disability."  Recommended Ruling (Doc. No. 24) at 29, citing SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996).  Weight can, of course, be estimated by sight under certain circumstances (perhaps not to a precise certitude), as when a backpack weighs down on another's shoulders, or appears particularly bulky or difficult to lift.  Sweeney directs the court's attention to cases such as James v. Barnhart, 451 F. Supp. 2d 483, 503-04 (W.D.N.Y. 2006), where explicit

determining eligibility for listings, RFC, or credibility, as it appears nowhere in his decision.  Indeed, he designated Sweeney's RFC as adequate to perform "Light Work," which is defined, in part, as "involv[ing] lifting no more than 20 pounds at a time."  20 C.F.R. §§ 404.1567(b), 416.967(b).  This finding suggests that the ALJ did not much credence, if any credence at all, to the social security worker's observation of her being able to life <u>more than 20 pounds</u>.  To the extent that he did rely on the worker's subjective observations, substantial evidence otherwise supports the ALJ's findings.  Consequently, the court will not disturb his decision.

## IV.  CONCLUSION

For the foregoing reasons, and because the court finds no clear error in the parts of the Recommended Ruling not addressed herein, the court **OVERRULES** the Objection (Doc. No. 25) and **AFFIRMS, ADOPTS, AND RATIFIES** the Recommended Ruling (Doc. No. 24).  Therefore, as explained in the Recommended Ruling, the Commissioner's Motion to Affirm the Decision of the Commissioner (Doc. No. 21) is **GRANTED** and Sweeney's Motion to Reverse the Decision of the Commissioner or in the Alternative for Remand for a New Hearing (Doc. No. 15) is **DENIED**.

**SO ORDERED**.

Dated at new Haven, Connecticut, this 25th day of September, 2015.

/s/ Janet C. Hall
Janet C. Hall
Chief United States District Judge

---

reliance on "statements of a speculative nature that are not supported by the record" warranted reversal.  Such is not the case here.